TIMOTHY COURCHAINE
United States Attorney
District of Arizona

LATANYA L. WATELAND
Arizona State Bar Number 031747
Assistant United States Attorney
Two Renaissance Square
40 North Central Avenue, Suite 1800
Phoenix, Arizona 85004-4408
Telephone: (602) 514-7500
Email: latanya.wateland@usdoj.gov
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA

| United States of America, | Case No. |
|---|---|
| Plaintiff, | **VERIFIED COMPLAINT FOR FORFEITURE *IN REM*** |
| v. | |
| Ethereum ("ETH") approximate United States dollar value of $103,133.00, | |
| Defendant *in Rem*. | |

Plaintiff United States of America brings this complaint and alleges as follows in accordance with Rule G(2) of the Federal Rules of Civil Procedure, Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions:

**NATURE OF THE ACTION**

1.  This is a civil action *in rem*, brought to enforce the provision of 18 U.S.C. § 981(a)(1)(C) for the forfeiture of virtual currency constituting or derived from proceeds traceable to a violation of an offense listed in 18 U.S.C. § 981, including but not limited to wire fraud, 18 U.S.C. § 1343, or a conspiracy to commit such offense.

2.  This is a civil action *in rem*, brought to enforce the provision of 18 U.S.C. § 981(a)(1)(A) for the forfeiture of virtual currency involved in a transaction or attempted transaction in violation of 18 U.S.C. §§ 1956(a)(1), money laundering, 1956(a)(2), international money laundering, and 18 U.S.C. § 1957, money laundering.

3. Venue and jurisdiction in Arizona are based upon 21 U.S.C. § 881(j) and 28 U.S.C. §§ 1355(b) and 1395 as acts and omissions occurred in the District of Arizona that give rise to this forfeiture action. This Court has jurisdiction. 28 U.S.C. §§ 1345 and 1355, and 18 U.S.C. § 981(h).

## DEFENDANT IN REM

4. The defendant *in rem* consists of Ethereum ("ETH") virtual currency approximate United States dollar value of $103,133.00 ("defendant property").

5. The United States Secret Service ("USSS") seized the defendant property from a Binance account, user ID xxxxx4817, held in the name of Mohammed Ahmed Saeed Abdelbaqi Rezeq ("Mohammed") on April 14, 2025. The defendant property is currently in the custody of the USSS.

## BACKGROUND ON CRYPTOCURRENCY

6. Cryptocurrency, a type of digital currency, is a decentralized, peer-to-peer, network-based medium of value or exchange that may be used as a substitute for fiat currency to buy goods or services or exchanged for fiat currency or other cryptocurrencies.[1] Examples of cryptocurrency are Bitcoin, Tether, and Ether. Cryptocurrency can exist digitally on the Internet, in an electronic storage device, or in cloud-based servers. Most cryptocurrencies have a "blockchain," which is a distributed public ledger, run by the decentralized network, containing an immutable and historical record of every transaction.[2] Cryptocurrency is not illegal in the United States.

7. Bitcoin[3] ("BTC") is a type of cryptocurrency. Payments or transfers of value made with bitcoin are recorded in the Bitcoin blockchain and thus are not maintained by any single administrator or entity. As mentioned above, individuals can

---

[1] Fiat currency is currency issued and regulated by a government such as the U.S. Dollar, Euro, or Japanese Yen.
[2] Some cryptocurrencies operate on blockchains that are not public and operate in such a way to obfuscate transactions, making it difficult to trace or attribute transactions.
[3] Because Bitcoin is both a cryptocurrency and a protocol, capitalization differs. Accepted practice is to use "Bitcoin" (singular with an uppercase letter B) to label the protocol, software, and community, and "bitcoin" (with a lowercase letter b) to label units of the cryptocurrency. That practice is adopted here.

2

acquire bitcoin through exchanges (i.e., online companies which allow individuals to purchase or sell cryptocurrencies in exchange for fiat currencies or other cryptocurrencies), bitcoin ATMs, or directly from other people. Even though the public addresses of those engaging in cryptocurrency transactions are recorded on a blockchain, the identities of the individuals or entities behind the public addresses are not recorded on these public ledgers.

8. Ethereum ("ETH") and Tether ("USDT") are also other types of cryptocurrencies. Tether is a "stablecoin" in that its exchange rate is a fixed exchange rate equivalent to the U.S. Dollar.

9. Cryptocurrency is stored in a virtual account called a wallet. Wallets are software programs that interface with blockchains and generate and/or store public and private keys used to send and receive cryptocurrency. A public key or address is akin to a bank account number, and a private key is akin to a PIN number or password that allows a user the ability to access and transfer value associated with the public address or key. To conduct transactions on a blockchain, an individual must use the public address (or "public key") and the private address (or "private key"). Only the holder of an address' private key can authorize any transfers of cryptocurrency from that address to another cryptocurrency address.

10. Although cryptocurrencies such as BTC have legitimate uses, cryptocurrency is also used by individuals and organizations for criminal purposes such as money laundering and is an oft-used means of payment for illegal goods and services. By maintaining multiple wallets, those who use cryptocurrency for illicit purposes can attempt to thwart law enforcement's efforts to track transactions.

11. As of January 23, 2025, one BTC was worth approximately $103,746.20, though the value of BTC is generally much more volatile than that of fiat currencies.

12. Exchangers and users of cryptocurrencies store and transact their cryptocurrency in a number of ways, as wallet software can be housed in a variety of forms, including on a tangible, external device ("hardware wallet"), downloaded on a PC

3

or laptop ("desktop wallet"), with an Internet-based cloud storage provider ("online wallet"), as a mobile application on a smartphone or tablet ("mobile wallet"), printed public and private keys ("paper wallet"), and as an online account associated with a cryptocurrency exchange. Hardware wallets are located on some type of external or removable media device, such as a USB thumb drive or other commercially available device designed to store cryptocurrency (*e.g.*, Trezor, Keepkey, or Nano Ledger). In addition, paper wallets contain an address and a QR code[4] with the public and private key embedded in the code. Paper wallet keys are not stored digitally. Investigators know that individuals possessing cryptocurrencies often have safeguards in place to ensure that their cryptocurrencies become further secured in the event that their assets become potentially vulnerable to seizure and/or unauthorized transfer.

13. BTC "exchangers" and "exchanges" are individuals or companies that exchange bitcoin for other currencies, including U.S. dollars. According to Department of Treasury, Financial Crimes Enforcement Network ("FinCEN") Guidance issued on March 18, 2013, virtual currency administrators and exchangers, including an individual exchanger operating as a business, are considered money services businesses.[5] Such exchanges and exchangers are required to register with FinCEN and have proper state licenses (if required under applicable state law). From investigators' training and experience, they know that registered money transmitters are required by law to follow Bank Secrecy Act anti-money laundering ("AML") regulations, "Know Your Customer" ("KYC") protocols, and other verification procedures similar to those employed by traditional financial institutions.

**Explanation of Hop Wallets and Swap Protocols**

14. Often, money laundering organizations will use a series of cryptocurrency wallets in order to obfuscate the origin of funds from a victim or other source. These

---

[4] A QR code is a matrix barcode that is a machine-readable optical label.
[5] *See* "Application of FinCEN's Regulations to Person Administering, Exchanging, or Using Virtual Currencies," *available at* https://www.fincen.gov/resources/statutes-regulations/guiadance/application-fincens-regulations-persons-administering.

wallets are often referred to as "hop wallets," as the funds often will hop from one wallet to the next in rapid succession.

15. Swaps, swap protocols, and swap exchanges generally refer to decentralized open source or proprietary systems that permit users to exchange cryptocurrencies without having to first exchange the funds into or out of fiat currencies.

**FACTS**

16. On or about December 3, 2024, the USSS Special Deputy Marshal, Cyber Fraud Task Force Officer ("TFO") Bruce Sears, received information from Coinbase Global Investigations advising they had a customer whose account was fraudulently taken over by an unknown suspect, later identified as Mohammed Ahmed Saeed Abdelbaqi Rezeq ("Mohammed").

17. Mohammed used the customer's account to both purchase and swap existing cryptocurrencies to Ethereum ("ETH").

18. Mohammed swapped the victim's existing Bitcoin ("BTC") and eleven other lessor known cryptocurrencies like Cardano ("ADA") and Litecoin ("LTC") to ETH.

19. In addition to "swapping" cryptocurrencies, Mohammed used the victim's linked Chase Checking account to withdraw approximately $35,000.00 and purchase approximately 10.83 ETH.

20. Mohammed then transferred the "swapped" and purchased ETH, through a series of "hop wallets" until landing at Binance.com.

21. Mohammed then swapped the ETH for Tether ("USDT").

**Victim Thomas Kimling**

22. The customer/victim was identified as Thomas Kimling ("Kimling"), a Phoenix resident.

23. On or about December 19, 2024, Kimling filed a Phoenix Police Report (#2024-1866118) to document his Coinbase account being fraudulently taken over and funds stolen.

24. Kimling told police that on November 9, 2024, he logged into his Coinbase account to add $1,000.00 to his account.

25. At this time, Kimling noticed the balance on his account was approximately $107,000.00.

26. On November 11, 2024, Kimling again logged into his Coinbase account and found the balance was now $3.00.

27. Kimling immediately contacted Coinbase who initiated an investigation.

28. Kimling was unsure how his account was compromised but Kimling did recall receiving an email, from who he thought was Coinbase, requesting he change his password.

29. Kimling changed his password and added a dual authentication set-up on his account.

30. Kimling does not know how Mohammad bypassed this security feature.

31. Kimling provided a Coinbase transaction history for his account.

32. Records were obtained from Coinbase documenting Kimling's account information and transaction history.

33. Upon reviewing the transaction history as well as the records from Coinbase, USSS TFO Sears learned that between November 11, 2024, at 5:03:34 UTC and November 11, 2024, at 6:12:57 UTC, Kimling's account was accessed, and cryptocurrencies were purchased and swapped by the suspect totaling approximately 47.366 ETH.

34. Kimling already owned 2.31 ETH to make a grand total of 49.676 ETH in the account.

35. Between November 11, 2024, at 05:08:08 UTC and November 11, 2024, at 06:12:57 UTC, twenty-three outgoing transactions from Kimling's account totaling approximately 49.676 ETH were sent to an Ethereum address ending in 3184.

**Tracing Kimling's Funds to the Subject Account**

36. USSS Cyber Fraud Task Force's analysis of Kimling's transactions revealed a significant portion of Kimling's funds were converted to Ethereum and transferred through a series of "hop wallets" and a swap protocol in which Kimling's funds were swapped into the stablecoin Tether ("USDT").

37. The last location of a portion of Kimling's funds were traced to an address ending in a14c (the "Binance account"), which is hosted at the cryptocurrency exchange Binance.com.

38. TFO Sears reviewed the records from the Binance.com address associated with the account ending in a14c.

39. Binance account records indicate the account is owned by User ID xxxxx4817, an individual with a photo identification # xxxxx5341 issued by the Arab Republic of Egypt.

40. Using a USSS Agent as a translator, TFO Sears determined the name of the individual on the photo identification is Mohammed Ahmed Saeed Abdelbaqi Rezeq.

41. The investigation revealed that the Binance account was established in May of 2021 and the account records indicate that approximately $354,198.00 in USDT had been deposited into the account since that date.

42. Approximately $105,344.00 had been deposited since November 11, 2024, when Kimling's funds were first deposited into the account.

43. The total sum frozen as of January 16, 2025, is approximately $134,060.00 USDT and $13,836.00 USDT equivalent in Cardano.

**Block Chain Analysis of Kimling's Transactions**

44. On November 11, 2024, twenty-three transactions totaling 49.676 ETH were transferred to a hop wallet address ending in 3184.

45. After receiving the deposits from Kimling's account, the very next transaction from 3184 was an outgoing transaction for 33.111 ETH to a hop wallet address ending in d158.

7

46. On November 11, 2024, hop wallet account ending in d158 then sent seven outgoing transactions totaling 33.094 ETH to a Binance.com address ending in a14c.

**Analysis of other transactions into the Subject Account**

47. USSS TFO Sears reviewed the Binance.com address ending in a14c account's records.

48. TFO Sears confirmed the deposit of 33.094 ETH, belonging to Kimling, mentioned in the blockchain analysis referenced in paragraph 46.

49. The last deposits into the account were the seven transactions totaling 33.094 ETH.

50. On November 11, 2024, at 06:37 UTC, the Binance account ending in a14c "swapped" the 33.094 ETH to 103,133.237 USDT.

51. Records from Binance.com on the account ending in a14c show there have been five successful withdrawals totaling 797.00 USDT since November 11, 2024.

52. Since the deposit of Kimling's 33.094 ETH or (103,133.237 USDT) the account ending in a14c is 134,060.51 USDT and 13,836.83 in Cardano (ADA).

53. As a result, and based upon USSS TFO Sears's training and experience, this sort of activity, *i.e.,* where cryptocurrency is quickly transferred into and out of a private wallet is indicative of an effort to hide the ultimate source of funds, in this case, victim Kimling, by adding layers of obfuscation.

54. By having funds routed through another account before arriving at the account of defendant property, the controller of the funds avoids any direct transfer from the victim to the defendant account.

55. On February 10, 2025, based upon the information provided by Binance and the victim and the tracing of the victim's stolen virtual currency, the U.S. Secret Service obtained and executed a federal seizure warrant for the seizure of 103,133.23678264 Tether ("USDT") stored in a Binance.com account for user identification number XXXXX4817 held in the name of Mohammed Ahmed Saeed

Abdelbaqi Rezeq and associated with the email address XXX2021@icoud.com, and all proceeds traceable thereto.

56. On April 14, 2025, the Phoenix Coinbase wallet received 103,111.74 USDT pursuant to the warrant.

57. The U.S. Secret Service referred the case to the United Stats Attorney's Office for judicial forfeiture.

## FIRST CLAIM FOR RELIEF

58. The United States incorporates and reincorporates all the allegations contained in paragraphs 1 through 57 as those fully set forth herein.

59. The defendant *in rem* constitutes or is derived from proceeds traceable to a violation of an offense listed in 18 U.S.C. § 981 including but not limited to wire fraud, 18 U.S.C. § 1343, or a conspiracy to commit such offense, and therefore is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) for the virtual currency.

## SECOND CLAIM FOR RELIEF

60. The United States incorporates and reincorporates all the allegations contained in paragraphs 1 through 57 as those fully set forth herein.

61. The defendant *in rem* was involved in a transaction or attempted transaction in violation of 18 U.S.C. §§ 1956(a)(1), money laundering, 1956(a)(2), international money laundering, and 18 U.S.C. § 1957, money laundering and therefore is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A) for the virtual currency.

WHEREFORE, the United States of America prays that process issue for an arrest warrant *in rem* issue for the arrest of the defendant property; that due notice be given to all parties to appear and show cause why the forfeiture should not be decreed; that judgment be entered declaring the defendant property be forfeited to the United Sates of

/ /

/ /

America for disposition according to law; and that the United States of America be granted such other and further relief as this Court deems just and proper, together with the costs and disbursements of this action.

DATED this 10th day of July 2025.

> TIMOTHY COURCHAINE
> United States Attorney
> District of Arizona
>
> */S/ LaTanya L. Wateland*
> LATANYA L. WATELAND
> Assistant United States Attorney